## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSLYN ODEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 14-6197 |
| SEPTA, et al | : | |

## MEMORANDUM

KEARNEY, J.                                                              October 5, 2015

Discrimination law has long required disabled employees suing their former employer for discrimination and retaliation after requests for accommodations to timely bring administrative claims.   Upon arriving in federal court, the employee must adduce specific facts after discovery sufficient to create genuine of issues of material fact regarding whether the employer's termination is pretext for invidious discriminatory intent.  The employee meets this burden with evidence which could lead a fact-finder to disbelieve the employer's business reason or believe an invidious discriminatory reason was more likely than not a motivating or determinative cause of the termination. A disabled employee's conclusions, broad accusations and suggested inferences unsupported by facts will not defeat an employer's summary judgment motion.

After her employer SEPTA transferred her from a bus driver job with over twenty years experience to a booth cashier position with her consent and to accommodate her sleep related disabilities, Roslyn Oden requested further accommodations concerning her tardiness at her new cashier job in mid-2011 or early 2012 which SEPTA did not address.  Oden did not raise this alleged failure to accommodate until mid-2013. During the almost eighteen (18) month term as a cashier, SEPTA suspended Oden for conduct and she answered two separate complaints

regarding altercations with fellow cashiers.  After investigations, SEPTA did not discipline her or affect her pay.

Thereafter, SEPTA videotapes confirmed Oden left her cashier post for an extended time during a January 2013 work day, costing it fares and violating SEPTA policy.  After formal and informal hearings, SEPTA terminated Oden in February 2013.  Several months later, Oden filed administrative claims and thereafter sued SEPTA.

Oden's Opposition to SEPTA's motion for summary judgment does not identify specific facts creating a genuine issue for trial. All evidence confirms SEPTA's February 2013 termination is based on legitimate business reasons arising from Oden's January 2013 violation of SEPTA policy.  We grant SEPTA's motion for summary judgment dismissing Oden's claims in the accompanying Order.

## I.     UNDISPUTED FACTS

In 1989, Plaintiff Roslyn Oden ("Oden") began driving buses for Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"). (A. at 3-4.)[1]  During the course of her employment, Oden began to suffer from bipolar disorder with depression, various sleep disorders including sleep apnea, circadian rhythm disorder and hypersomnia, and other medical conditions.[2]  (A. at 4, 41).  Twenty-two years later, Oden's personal physician, Dr. Calvin

---

[1]     The Court's Policies require a Statement of Undisputed Material Facts ("SUMF") filed in support of a summary judgment motion. SEPTA filed its SUMF at ECF Doc. No. 18-5.  Oden responded to the SEPTA's SUMF and included additional facts she contends create a genuine issue of material fact at ECF Doc. Nos. 27-1 and 27-2. The party moving for summary judgment must also submit an appendix of exhibits or affidavits. SEPTA's appendix appears at ECF Doc. No. 18-1. The responding party may submit additional exhibits. Oden submitted additional materials to the appendix at ECF Doc. Nos. 24-4, 24-5, and 24-6.  References to the appendix in this opinion shall be referred to as "A" followed by the Bates number, for example, "A. at 1a."

[2]     SEPTA claims Oden is only now introducing new disabilities previously not alleged such as prolonged post-traumatic stress disorder, generalized anxiety disorder, attention deficit

Stafford ("Dr. Stafford"), reported she could no longer drive safely, and SEPTA disqualified her as a bus operator. (*Id.*) Due to an incident while still a bus driver, Oden entered into a "Last Chance Agreement" with SEPTA on April 19, 2011. (A. at 68-69.) The Last Chance Agreement stated "should Ms. Gambrell be charged with committing any infraction for which discipline is justified, she shall be subject to immediate discharge." (*Id.*) In June 2011, Dr. Stafford cleared Oden to return to work and completed SEPTA's standardized physical form regarding Oden's capabilities. (A. at 43.) SEPTA presented Oden with several positions. (A. at 12-13.) Oden discussed the cashier position with Dr. Stafford. (A. at 18.) Oden believed she could perform the duties listed on the cashier job description as the hours "seemed better", and Dr. Stafford strongly recommended the position. (A. at 12-14, 18.) Oden chose the position of cashier and returned to work on June 20, 2011. (A. at 20, 58.)

Defendant Stacey Richardson ("Richardson"), SEPTA's Assistant Director of Transportation, supervised Oden as a cashier.[3] (A. at 31-33.) Richardson supervised eight (8) dispatchers, twenty-four (24) field managers, and approximately 170 maintenance custodians and 390 cashiers. (A. at 355.) The cashier position is governed by the collective bargaining agreement between SEPTA and the Transport Workers Union Local 234. (A. at 8, 49-55.)

On or about July 3, 2011, shortly after beginning as a cashier, Oden told Darryl Wade, Director of Transportation, of her sleep disorders and her concern about reporting times seeking a flex schedule and use of personal or sick time to avoid being marked late. (A. at 23-24.) Oden

---

disorder, and fibromyalgia. (ECF Doc. No. 32, at 2-4.) Oden testified these alleged additional disabilities played no part in her requests for accommodation and did not affect her ability to perform her cashier job. Additionally, there is no cited evidence Oden ever informed SEPTA of any disabilities other than her sleep related disabilities.

[3]     Without citing evidence, Oden claims Richardson told her in 2011, "I really don't want you here." (ECF Doc. No. 27, at 2).

3

requested leeway for her reporting times as she had problems waking up. (A. at 23.) At the end of June or beginning of July 2011, Oden also met with Richardson and asked for an accommodation. (A. at 27-28.) Oden requested a flexible reporting time and for Richardson to "work around" her being late. (A. at 28.) From July 2011 until April 2012, Oden did not see Richardson and had minimal, if any, telephone conversations with her. (A. at 30-31.)

*Employment actions not leading to adverse action.*

On January 4, 2012, Dr. Stafford evaluated Oden and wrote a letter to SEPTA representing "accommodations for lateness and drowsiness on the job will still be required" until workup is complete. (A. at 448.) Dr. Stafford further represented Oden "should be able to perform all of her duties." (*Id.*)

On January 30, 2012, Oden went on an approved FMLA leave, and on April 6, 2012, SEPTA's Medical Department approved Oden to return to work. (A. at 513-14.) On April 7, 2012, Oden returned from FMLA leave. (*Id.*) When Oden returned from leave in April, she met with Richardson to discuss her excessive absentee points. (A. at 264.) During that meeting, Richardson presented Oden with "the infraction sheet, the point sheets" and said Oden was over her "point limit." (*Id.*) Richardson informed Oden her employment was terminated because of her point total exceeded twenty (20) and this constituted a violation of her "Last Chance Agreement" with SEPTA thus requiring termination of her employment. (*Id.* at 70-74, 264.) On April 13, 2012, SEPTA terminated Oden due to excessive disciplinary points assessed against her during the FMLA leave period. (A. at 456, 491.) SEPTA held a formal hearing and the hearing officer denied Oden's grievance and recommended termination. (A. at 70-71.) SEPTA then held a "Labor Relations Step hearing" on July 5, 2012, and SEPTA's labor relations

manager upheld Oden's termination.[4] (A. at 74.) Through negotiations between SEPTA and the Union, SEPTA allowed Oden was allowed to return to work subject to the condition her attendance points remain at twenty-three (23) and if she accrues additional points prior to the total falling below twenty (20), Oden would be subjected to discipline. (A. at 75.) On September 13, 2012, SEPTA reinstated Oden as an employee. (A. at 457, 515-16.)

On October 24, 2012, SEPTA cashier Chevelle Steward filed a complaint against Oden after an altercation in the cashier booth. (A. at 76-77.) On October 30, 2012, Richardson interviewed Oden about the incident, but did not discipline Oden although Oden claims Richardson threatened to fire her. (A. at 34-35a, 304.)

On November 22, 2012, Oden became involved in an altercation with a second cashier, Latonya Gibbs. (A. at 38-39.) Oden claimed cashier Gibbs assaulted her. SEPTA "terminated immediately or held off" Oden pending an investigation of the incident. Upon close of the investigation thirteen (13) days later, Oden returned to work. Oden did not meet with anyone regarding the incident, was not interviewed by anyone regarding the incident, and did not meet with or have any contact with Richardson regarding the incident. (A. at 39, 436-37.) SEPTA paid back pay to Oden for the thirteen (13) days she missed and did not discipline her.

### Employment conduct leading to termination.

Following her January 31, 2013 work day, Richardson walked from her office at 1234 Market Street to the train platform at 2nd and Market for her commute home. On the platform, Richardson could not see the cashier in the window but as she came closer, Richardson observed

---

[4]     Oden claims Richardson falsified documents to terminate her employment. Specifically, Oden alleges Richardson failed to warn her of her point total prior to termination and then subsequently lied about it when asked whether she did in fact provide warnings. (*Id.* at 271.) However, Oden testified Richardson did not actually falsify any documents but rather she alleges "she spoke the lie" of providing warning of her point total. (*Id.*)

5

Oden leaning on her elbow sleeping or being inattentive at her cashier booth.  (A. at 78.)

Richardson notified SEPTA's Derrick Supplee ("Supplee"), zone supervisor for that train

platform.  (*Id.*)  Supplee reviewed the video from the relevant time period, which revealed Oden

using her phone for 40 minutes, leaving her booth without permission for seventy-five (75)

minutes, and failing to properly register twenty (20) fares.  (A. at 79-83.)  As Oden's conduct on

video evidenced violations of SEPTA policy, Supplee recommended SEPTA terminate Oden's

employment.    SEPTA  then  held  informal  and  formal  hearings  with  union  representatives

resulting in the hearing officer denying Oden's grievance. SEPTA terminated Oden.  (A. at 56-

57, 79-83.)    SEPTA barred Oden from work on February 5, 2013, and after grieving her

discipline, a  hearing  officer  denied  the  grievance  and  terminated  Oden's  employment  on

February 27, 2013.  (A. at 79-81, 84.)  On March 7, 2013, SEPTA held a "Labor Relations Step

hearing" to review Oden's discipline.  (A. at 82.)  SEPTA's labor relations manager upheld the

termination and again denied Oden's grievance.  (A. at 83.)

On July 26, 2013, Oden filed a charge of discrimination with the Pennsylvania Human

Relations  Commission  ("PHRC")  and  the  Equal  Employment  Opportunity  Commission

("EEOC").  (A. at 85-90.)

## II.    ANALYSIS

On October 13, 2014, Oden filed suit claiming SEPTA and Richardson (collectively,

"SEPTA") owe  her  damages  for  violating  42 U.S.C.  § 12112 under  the  Americans  with

Disabilities  Amendments  Act  ("ADAAA")  and  the  Pennsylvania  Human  Relations  Act

("PHRA") and violating 42 U.S.C. § 12203 under the ADAAA and the PHRA by retaliating

against her.  Oden also sues Richardson for allegedly violating the Civil Rights Act, 42 U.S.C. §

1983.

6

Following discovery, SEPTA moves for summary judgment arguing: 1) Oden's ADA discrimination claims are time barred and fail substantively; 2) Oden's ADA retaliation claims fail to establish a causal connection between the protected act and the adverse employment action, and fail to demonstrate SEPTA's legitimate, non-discriminatory reasons were pretext for discriminatory intent; and 3) Oden's Section 1983 claim fails to demonstrate purposeful discrimination on the basis of her disability, as well as a causal connection between her alleged protected speech and her termination.

As Oden cannot adduce genuine issues of material fact to defeat summary judgment dismissing her claims as a matter of law, we grant SEPTA's motion for summary judgment in the accompanying Order.[5] Fed.R.Civ.P. 56(c)(1), (e)(3).

### A. Oden's failure to accommodate claims arising from her mid-2011 and early 2012 requests are time-barred.

SEPTA argues many of Oden's alleged adverse employment actions are time barred.[6] Under the ADA, within 300 days of the alleged unlawful employment practice, a plaintiff must

---

[5]     Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

seek relief from a state or local agency and then file a complaint with the EEOC.[7] *Mercer v. Southeastern Pennsylvania Transit Authority*, 26 F. Supp. 3d 432, 440-41 (E.D. Pa. 2014) *aff'd sub nom. Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015); 42 U.S.C. § 12117 (enforcing procedures used in Title VII of the Civil Rights Act of 1964 apply to ADA employment discrimination claims); 42 U.S.C. § 2000e-5(e)(1) (establishing the 300-day timeframe for ADA claims). " '[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' " *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). If the claim is not filed timely, the action is considered time-barred and the plaintiff cannot recover under the ADA. *Id.* at 109-10.

Oden filed her EEOC and PHRA complaint on July 26, 2013. We may consider unlawful employment practices up to 300 days prior to the date of filing, or September 29, 2012. Viewing the facts in light most favorable to Oden, she requested reasonable accommodations relating to

---

[6]     Oden failed to respond in any measure to this argument. As such, the Court may consider any contrary argument waived. *Walker v. Centocor Ortho Biotech, Inc.*, No. 11-4917, 2013 WL 664204, *4 (E.D. Pa. Feb. 25, 2013), *aff'd* 558 F. App'x 216. We will nevertheless address the argument fully.

[7]     Our analysis references only Oden's ADA claims, because the ADA analysis applies equally to a PHRA claim. *Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996). We note some district courts in this Circuit have not interpreted the two conterminously with regard to what constitutes a disability because the PHRA has not been amended since the ADA's amendment in 2009. *See Szarawara v. Cnty. of Montgomery*, No. 12-5714, 2013 WL 3230691, *2 (E.D. Pa. June 23, 2013); *Deserne v. Madlyn & Leonard Abramson Ctr. For Jewish Life, Inc.*, No. 10-3694, 2012 WL 1758187, *3 n.3 (E.D. Pa. May 17, 2012). The 2009 Amendments "relaxed the ADA's standard for disability" but since we are not called upon to determine whether Oden is disabled within the meaning of either statute, the two can still be analyzed together. *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 689 n.7 (W.D. Pa. 2014).

her new cashier position in June or July 2011.[8]   Oden alleges SEPTA's Daryl Wade and Richardson ignored her requests and no one spoke to her again regarding what accommodations, if any, could be accomplished.

A request for reasonable accommodation is considered a "one-time occurrence rather than a continuing practice." *Mercer,* 608 F. App'x 60 (3d Cir. 2015) (quoting *Aubrey v. City of Bethlehem*, 466 F. App'x 88 (3d Cir. 2012)). *Mercer* involved a SEPTA maintenance custodial bus driver with diabetes, high blood pressure, and high cholesterol.  26 F. Supp. 2d at 437. Mercers' disabilities prevented him from cleaning buses in excessive heat, which exacerbated his cardiac and medical conditions. *Id.* SEPTA's medical doctor recommended Mercer be allowed to clean the buses with the air conditioning turned on but Mercer was still routinely assigned to work on buses without air conditioning. *Id.* at 437-38.  Mercer filed an EEOC charge on July 11, 2011, which made the 300-day cutoff date September 11, 2010. *Id.* at 441.  The court found Mercer's requests, dated June 21, 2010, and July 20, 2010, "well before the September 11 cutoff." *Id.*  The court declined to apply the continuing violations doctrine to save Mercer's accommodation claims. *Id.*  "The doctrine renders an action timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* (internal quotations omitted).  However, "[a]n employer's denial of a request for a reasonable accommodation is a discrete act of discrimination that is an independently actionable unlawful employment practice under the ADA." *Id.* at 442.  Accordingly, the continuing violations doctrine could not apply.

Oden filed her EEOC and PHRA complaint on July 26, 2013, thus making the statutory cutoff September 29, 2012.  Oden alleges she met with SEPTA's Wade and Richardson in July

---

[8]      Oden also discusses a subsequent request for accommodation in January 2012.  (A. at 448.)  We are also barred from reviewing this request as outside the 300 day period.  Further, continually requesting an accommodation does not render a claim timely as the "limitations period would be rendered meaningless." *Mercer*, 26 F. Supp. 3d at 442.

9

2011 to discuss accommodations in her cashier position for her various sleep related disabilities.

Accordingly, SEPTA's failure to accommodate occurred when Wade and Richardson effectively

denied Oden's request in July 2011, well before the statutory cutoff.

As each incident of failure to reasonably accommodate is its own discrete act and a one-

time occurrence rather than a continuing practice, Oden's claims based on accommodation

requests from June or July 2011, or even January 2012, are time barred.  To the extent Counts I

and II are asserting failure to accommodate claims, we grant summary judgement in favor of

SEPTA on those claims.

### B. Oden's disability discrimination claim fails because she cannot show pretext.

While it is apparent from Oden's response to SEPTA's motion for summary judgment

her primary claim is SEPTA's failure to accommodate, she also alleges SEPTA terminated her

because of her disabilities.  SEPTA argues Oden cannot establish a *prima facie* case of disability

discrimination because she cannot perform an "essential function" of the cashier job—i.e.

punctual attendance at work.[9]  (ECF Doc. No. 18-3, at 11-14.)  In response, Oden argues

punctuality is not an essential function of the cashier position in the job description and thus it is

a "performance issue" rather than a "qualification issue."

Oden must establish a *prima facie* case of disability discrimination by demonstrating:

"(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to

perform the essential functions of the job, with or without reasonable accommodation; and (3)

[s]he has suffered an otherwise adverse employment decisions as a result of discrimination."

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (quotation omitted).  Under

---

[9]      SEPTA concedes Oden possesses the appropriate educational background, employment
experience, and skills to perform as a cashier, which is the first inquiry of the "otherwise
qualified prong." *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 146 (3d Cir. 1998).

the familiar *McDonnell Douglas* framework, if Oden makes out a *prima facie* case, the burden

shifts to her employer SEPTA to proffer evidence of legitimate non-discriminatory reasons for

the adverse employment action. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir.

2010) (citation omitted). " 'The defendant satisfies its burden at this step 'by introducing

evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory

reason for the unfavorable action.' " *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.

1994)). Once satisfied, Oden must then show, by a preponderance of the evidence, SEPTA's

explanation is "pretextual." *Id.*

### 1. Is punctuality an essential function of the cashier job?

In determining an essential function of a cashier job, we may look to various sources.

"Essential functions must be fundamental to one's job and not simply marginal. The inquiry into

whether the job requirement is essential to one's job is a 'factual determination that must be

made on a case by case basis [based upon] *all* relevant evidence." *Coneen v. MBNA Am. Bank,*

*N.A.*, 334 F.3d 318, 326 (3d Cir. 2003) (internal quotations omitted) (alteration and emphasis in

original). Such evidence includes but is not limited to:

1) The employer's judgment as to which functions are essential;
2) Written job descriptions prepared before advertising or interviewing applicants for the job;
3) The amount of time spent on the job performing the function
4) The consequences of not requiring the incumbent to perform the function;
5) The terms of the collective bargaining agreement;
6) The work experience of past incumbents in the job; and/or
7) The current work experience of incumbents in similar jobs

29 C.F.R. § 1630.2(n)(3).

SEPTA, as an employer serving customers, values punctual attendance from its cashiers.

It is difficult to imagine punctuality is not required by most employers when dealing with the

public. This factor weighs in favor of finding punctuality an essential function of the job. We

find many consequences of a cashier not being punctual including fares not registered, passengers cannot have their questions answered, handicapped passengers may not be able to reach the platform, and SEPTA's operations would suffer. Accordingly, this factor also weighs in favor of punctuality being an essential function. Additionally, the terms of the collective bargaining agreement place an emphasis on punctuality with its comprehensive "points policy" for tardiness. This factor also weighs in favor of punctuality being an essential function of the cashier position. It is no surprise an employee must show up to work on time or risk termination.

While our Court of Appeals has found regular attendance to be an essential function in most jobs, it has yet to address a case with employees serving the public and finding punctuality to be an essential function of a job absent a compelling reason. *See Miller v. Univ. of Pittsburgh Med. Ctr.*, 350 F. App'x 727, 729 (3d Cir. 2009) (finding regular attendance an essential function); *Coneen*, 334 F.3d at 329 ("Although there clearly may be some situations where an employee's starting time cannot be altered because it is an essential function of the job, nothing on this record leads us to conclude that to be the case here.")

In some ways Oden's case is similar to *Earl v. Mervyns, Inc.,* 207 F.3d 1361 (11th Cir. 2000), cited by the court in *Coneen* and by SEPTA here. The court of appeals found punctuality to be an essential function for an employee tasked with opening a small retail store. 207 F.3d at 1366. Without the employee arriving on time, the store would lose customers and sales. *Id.* We are aware of the similarity of *Earl* and the differences of *Coneen*. However, we are also aware of our Court of Appeals' disdain for district courts defining an essential function as a matter of law and usurping the role of the jury. *See Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 613-14 (3d Cir. 2006) (citing *Deane*, 142 F.3d at 148, *and Skerski v. Time Warner Cable Co.*, 257 F.3d 273 (3d Cir. 2001)).

While we cannot presently imagine an employer serving the public not viewing punctuality as an essential function for the position, we decline to find this observation as a matter of law here and will not grant summary judgment to the employer SEPTA on this issue. However, because we find Oden cannot establish pretext and her claims must be dismissed as a matter of law as described below, we need not address possible reasonable accommodations for a cashier exhibiting repeat tardiness or whether the parties engaged in the interactive process.

### 2. Oden cannot show SEPTA's legitimate non-discriminatory reasons are pretext for disability discrimination.

SEPTA conducted an investigation and found Oden violated multiple SEPTA policies resulting in her termination. SEPTA found Oden used her cellphone in her booth and left her booth for seventy-five (75) minutes resulting in twenty (20) unregistered fares. At the March 7, 2013 formal hearing, neither Oden nor her union contested the occurrence of these events. SEPTA met its "relatively light" burden under *McDonnell Douglas*.

Oden must now show the real reasons for SEPTA's termination of her employment were pretextual by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. To discredit SEPTA's reasons, Oden "must demonstrate such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Burton v. Teleflex*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes*, 32 F.3d at 765). A plaintiff cannot defeat summary judgment simply by showing the reason was wrong, "but that it was so plainly wrong it cannot

have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

Oden never clarifies facts for why she believes SEPTA's given reasons are pretextual. Giving her the benefit of any doubt, while she does not challenge the credulity of the legitimate reasons, she argues SEPTA possessed an invidious discriminatory reason which is more likely than not the real reason for her termination. Oden argues Richardson went to her platform to "snoop around" yet Richardson testified she often uses that platform to catch the train home.[10] (A. at 357-58.) However, even if Richardson's activity constituted what Oden alleges is excessive monitoring, this monitoring by a supervisor is not sufficient to establish the given reasons for her termination are actually pretext for disability discrimination. *See Martinelli v. Penn Millers Ins. Co.*, 269 F. App'x 226, 230 (3d Cir. 2008) (finding scrutiny of employee 'unpleasant and annoying' but not sufficient to support a discrimination claim).

Oden attacks Supplee's review of the video alleging his investigation should have been stopped when he apparently discovered oden had not been sleeping as Richardson claimed. (ECF Doc. No. 27, at 21.) Oden argues Supplee, influenced by Richardson, "continued reviewing Plaintiff's work performance for over four hours, looking for a reason to subject Plaintiff to disciplinary action, and using false allegations to support termination of Plaintiff's employment." (*Id.*)

Oden's conclusory argument is not persuasive. Richardson's memorandum to Supplee to investigate further, did not solely allege Oden may have been asleep at the booth. (A. at 78.) Richardson believed Oden may have been "so inattentive, at the window, which is a violation."

---

[10]     Many of the "facts" which Oden asserts are disputed are entirely contained in her own declaration attached to her response to the summary judgment motion. Those "facts," to the extent Oden relies on them, will not be considered where they are not supported by evidence in the record.

14

(*Id.*) When Supplee began the investigation, he saw Richardson standing in front of the turnstiles at the platform and she appeared to be looking at the cashier booth where Oden was stationed. (A. at 386.)   Supplee could not see Oden from that angle so he switched to another angle allowing him to see Oden in the booth using her cell phone, a violation of SEPTA policy.  (*Id.*) Supplee's diligence substantiated Richardson's claim.  In addition to substantiating Richardson's claim, Supplee, on his own, noticed Oden left her booth on the eastbound platform and went to the booth on the westbound platform where she remained for approximately 75 minutes. Supplee investigated this absence by reviewing the videos of activity at both booths between 5:45 p.m. and 7:00 p.m.   Supplee's review of these videos showed Oden leaving her booth and going to the westbound platform and remaining there for 75 minutes—another violation of SEPTA policy—during which time 20 fares went unregistered—a further violation of SEPTA policy.   Oden alleges her dispatcher permitted her to take a "personal" and thus she did not violate SEPTA's policy.  However, after reviewing the video, Supplee found Oden to be absent from her booth twice.  The first time, she asked the dispatcher for a "personal."  After this, she returned to her booth and then left again to go to the westbound platform.  (*Id.* at 82.)  It is clear from the testimony regarding the video evidence Oden engaged in the conduct which lead to her termination, and frankly she does not deny it.

Supplee, not Richardson, recommended SEPTA terminate Oden's employment due to her infractions confirmed by the video.   Supplee testified to never having met Oden before the informal hearing.  He did not know of Oden's disabilities and Richardson never informed him of any.   (A. at 382-85.)   We find it difficult to deduce Supplee recommended Oden's termination for any reason other than the evidence he witnessed on video when he had no knowledge of

15

Oden's disability.  Accordingly, we find Oden cannot show SEPTA's legitimate business reasons for terminating her were pretext.

### C.     Oden's ADA retaliation claim fails because she cannot show a causal connection or pretext.

Oden claims SEPTA retaliated against her by terminating her in April 2012 and February 2013 for engaging in the protected activity of requesting accommodations in July 2011.  To defeat summary judgment under the *McDonnell Douglas* framework, Oden must first establish a *prima facie* case of retaliation.  *Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 300 (3d Cir. 2007).  If she meets a *prima facie* case, the burden of production shifts to SEPTA to identify legitimate, non-discriminatory reasons for the adverse employment action.  *Id.*  If SEPTA then meets this burden, the burden of production rebounds to Oden and she must show, by a preponderance of the evidence, SEPTA's "proffered explanation was false, and that retaliation was the real reason of the adverse employment action.  *Id.*  (quoting *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)).  Even assuming Oden established a *prima facie* case of retaliation, she fails to show SEPTA's legitimate business reasons were actually pretext for disability discrimination.

### 1.  Oden has not timely claimed the April 2012 termination is retaliatory.

Before considering whether SEPTA terminated her in February 2013 in retaliation for asking for accommodations in July 2011, we first address whether Oden can now claim her April 2012 termination is retaliatory or if this claim is time-barred.  Employment practices such as termination are "discrete discriminatory acts" which are timed barred if not timely filed. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing *Morgan*, 536 U.S. at 113-14.) As analyzed above, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory act.  42 U.S.C. § 2000e–5(e)(1).  Since Oden filed her PHRC and EEOC

charge on July 26, 2013, we may review events occurring within the 300 days occurring after September 29, 2012. As such, any claim of retaliation causing April 2012 termination is time barred.

### 2. Oden cannot establish a *prima facie* retaliation claim.

Oden cannot establish a *prima facie* retaliation claim: (1) she engaged in protected employee activity; (2) SEPTA's adverse action either after or contemporaneous with her protected activity; and (3) a causal connection between her protected activity and SEPTA's February 2013 termination. *Fogleman v. Mercy Hospital, Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If a plaintiff relies on the temporal proximity to establish a causal connection, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive . . . ." *Krouse*, 126 F.3d at 503.

SEPTA concedes Oden engaged in a protected employee activity. (ECF Doc. No. 18, at 19.) SEPTA challenges Oden's ability to show a causal connection between her protected activity and her ultimate termination. SEPTA argues Oden cannot sufficiently connect her July 2011 requests for accommodation and the February 2013 termination.[11]

---

[11]     SEPTA also argues a lack of temporal proximity between the July 2011 protected activity and the April 2012 termination. While we agree that there is no temporal proximity and no evidence of an intervening pattern of antagonism at that time, we find any such claim time barred.

We find Oden cannot show a sufficient causal connection between her July 2011 protected activity and the February 2013 termination. Fourteen (14) months after the protected activity, SEPTA reinstated Oden in September 2012.

Oden then focuses on the five (5) months between the reinstatement and termination. The five months between her reinstatement and her termination are not "unduly suggestive" of retaliatory motive.[12] *See McGhee v. Thomas Jefferson Univ. Hosp.*, No. 12-2919, 2013 WL 4663541, *6 (E.D. Pa. Aug. 29, 2013) ("[T]he timing of alleged retaliatory conduct can, by itself, support a finding of causation only when temporal proximity between the protected activity and adverse action is unduly suggestive." (internal quotations omitted)); *see also Williams v. Phila. House. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding two months between protected activity and adverse employment action not unduly suggestive).    As Oden cannot show unduly suggestive timing, she must look to other evidence to show a causal connection.

Oden attempts to establish a pattern of antagonism directed towards her by Richardson. Between September 2012 and her termination in February 2013, Oden points to two events we find relevant. In October 2012, another SEPTA cashier filed an "incident report" accusing Oden of threatening to slap the cashier for referring to her as "Rosalind." (A. at 76.) According to Oden, Richardson investigated this incident and then met with Oden and   her union representative. (*Id.* at 299-300.) Oden alleges Richardson attempted to terminate her for this incident, as well as a points violation, at this meeting. (*Id.* at 300-01.) Further, Oden alleges Richardson attempted to humiliate her by making Oden repeat her name and spell it. (*Id.*) Oden

---

12      Oden alleges she made a request for accommodation in September 2012 as she was being reinstated. This alleged request occurred prior to the September 29, 2012 statutory cutoff but we assume it is sufficient to show protected activity for her retaliation claim. If this is not protected activity, then Oden's July 2011 requests for accommodation—18 months prior to her February 2013 termination— are even more attenuated.

18

received no discipline and SEPTA did not terminate her employment as a result of the incident or the meeting.[13] (*Id.* at 304.)

Oden also points to "excessive monitoring" from Richardson. (ECF Doc. No. 27, at 21.) On January 31, 2013, Oden alleges Richardson entered Oden's assigned station "to snoop around and monitor" Oden's work. (*Id.*) Oden claims Richardson falsely alleged Oden slept at her work station. (*Id.*) Richardson wrote a memorandum to Supplee, observing a "female cashier leaning down on one elbow, while supported by the other." (A. at 78.) Richardson noted her and Oden's eyes met "simultaneously" and Oden's appearance "left the impression she had been awakened or was being so inattentive, at the window, which is a violation . . . ." (*Id.*) Richardson asked Supplee to investigate further. (*Id.*)

We do not find either of these incidents, alone or in the aggregate, sufficient to bridge the causation gap. Richardson's October 2012 meeting with Oden is not capable of evidencing a pattern of antagonism towards Oden after her reinstatement. *See LeBlanc v. Hill School*, No. 14-1674, 2015 WL 144135, *20 (E.D. Pa. Jan. 12, 2015) (finding threatened termination may only support causal connection in aggregate with other antagonistic events). Further, we do not find the "excessive monitoring" claim to evidence of a pattern of antagonism. Supplee testified part of his duties include going to platforms and checking on cashiers to make sure they were performing their duties. Additionally, Richardson testified when she is out "on the line" she takes notice of how the cashiers are performing. (A. at 356.) Moreover, Richardson testified to

---

[13]     Oden also points to a subsequent incident with another cashier in November 2012. This incident resulted in Oden being "held off" for thirteen (13) days. (*Id.* at 314.-16.) There is no record evidence Richardson, or anyone with knowledge of Oden's disability, investigated this incident. No one interviewed Oden about the incident. (*Id.* at 316.) Further, after the thirteen days expired, Oden returned to work with back pay for time missed, full benefits, no discipline, and no loss of seniority. (*Id.* at 316-17.) We do not find this incident to be in any way relevant to our analysis because there is no evidence of antagonism towards Oden.

often using the Second Street eastbound platform for her trip home to Northeast Philadelphia. (A. at 357.) Even in the aggregate we do not find these two incidents sufficient to evidence a pattern of antagonism directed towards Oden because of her protected speech. Since Oden lacks unusually suggestive temporal proximity, as well as a pattern of antagonism directed at her, we find she has failed to show a causal connection between her requests for reasonable accommodation and her February 2013 termination.

### 3. Assuming Oden establishes a *prima facie* retaliation case, SEPTA articulates a legitimate, non-discriminatory reason for the adverse employment action.

Even assuming Oden establishes a *prima facie* retaliation case, SEPTA satisfies its burden of production by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The employer's burden to prove a legitimate, non-discriminatory reason is relatively light, but the reason must be articulated. *Id.* If the employer satisfies the burden, the burden rebounds to the plaintiff to prove, by a preponderance of the evidence, the employer's explanation is pretext. *Id.*

Here, SEPTA satisfied its burden. Oden claims SEPTA subjected her to adverse employment actions through the February 2013 termination. SEPTA claims the termination did not relate to the disability, and instead derives from multiple SEPTA policy violations. Oden's supervisor reviewed a video of Oden on January 31, 2013. The video showed Oden's inattentiveness while on duty, looking at her cell phone for an extended period of time, leaving her booth for 75 minutes and allowing 20 fares to go unregistered. Taken as true, SEPTA produced sufficient evidence establishing the light burden of articulating a legitimate, non-

discriminatory reason.  The burden thus rebounds to Oden to prove SEPTA's response is merely a pretext and retaliation actually motivated its adverse employment action.

### 4. Oden fails to prove SEPTA's legitimate, non-discriminatory reasons constitute pretext for the adverse employment action.

For the same reasons discussed in Oden's disability discrimination claim, Oden fails to provide sufficient evidence for a reasonable jury to find SEPTA's reasons for the Oden's termination were actually pretext for disability discrimination. She adduces no competent evidence demonstrating pretext. Fed. R. Civ. P. 56 (c)(3).

### D. Oden's Section 1983 claim against Richardson fails for the same reasons as the ADA claims.

In an archetypal bootstrap, Oden claims Richardson violated her rights under the Equal Protection Clause of the Fourteenth Amendment and under the Protestation Clause of the First Amendment when Richardson failed to accommodate Oden's request and then subjected her to retaliatory actions in April 2012 and February 2013.  (ECF Doc. No. 27, at 22-23.)  SEPTA argues plaintiff may not assert a § 1983 claim based on ADA violations, and regardless, Oden failed to demonstrate any purposeful discrimination on the basis of her disability.  (ECF Doc. No. 18, at 21.)

"Section 1983 is unavailable to enforce statutory rights in two situations . . . (1) 'where Congress has foreclosed such enforcement of the statute in the enactment itself;' and (2) 'where the statute did not create enforceable rights, privileges or immunities within the meaning of § 1983.' " *Mercer*, 26 F. Supp. 3d at 448 (quoting *S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 779 (3d Cir. 2001) (quotation omitted)).  Whereas two circuit courts have found the ADA's comprehensive statutory scheme preclude a § 1983 claim, our Court of Appeals has not confronted the issue head on and district courts are split on the issue. *Id.* (citing

*Okwu v. McKim*, 682 F.3d 841, 844-45 (9th Cir. 2012), and *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1530-31 (11th Cir. 1997)). However, we need not decide whether such a claim is allowed because even if it is, Oden fails to adduce facts sufficient to go to trial on these claims.

To bring a successful claim for denial of equal protection, Oden must prove existence of purposeful discrimination by demonstrating Richardson treated her differently from other, similarly situated employees because of her disabled status. *Mercer v. SEPTA*, 608 F. App'x 60 (3d Cir. 2015) (citing *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014)). Oden fails to adduce evidence of any kind showing other similarly situated employees were treated differently. We have no evidence of similarly situated employees to review or which creates a genuine issue of material fact. Fed. R. Civ P. 56(c)(3). Oden's equal protection claim cannot be sustained.

To establish a First Amendment retaliation claim, Oden must show she engaged in constitutionally protected conduct and "the protected activity was a substantial factor in the alleged retaliatory action." *Id.* (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). For her accommodation request to constitute First Amendment protected speech, "the employee must be speaking as a citizen, on a matter of public concern" and the employer "did not have an adequate justification for treating the employee differently from any other member of the general public." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (internal quotations omitted). Here, Oden is only speaking of an employment grievance involving her, and not challenging a matter of public concern. *See Middleton v. Deblasis*, 844 F. Supp. 2d 556, 564-55 (E.D Pa. 2011) (declining to find speech solely about plaintiffs own abuse and mistreatment protected speech); *Miles v. City of Phila.*, No. 11-4040, 2011 WL 4389601, * 4 (E.D. Pa. Sept. 21, 2011) (holding complaint did not allege sufficient protected activity where

allegations related solely to conduct directed at plaintiff). Further, as Oden fails to establish a causal connection between her protected activity and her termination, and she fails to show SEPTA's legitimate, non-discriminatory reason for terminating her was actually pretext, she cannot show her accommodation request is a substantial factor in the alleged retaliatory action.

## III.   CONCLUSION

We grant summary judgment on Oden's ADA and PHRA failure to accommodate claims because they are time barred. Further, we grant summary judgment in favor of SEPTA on Oden's ADA and PHRA disability discrimination and retaliation claims as she cannot establish the proffered reasons for her termination were pretext for either for disability discrimination or retaliation. Lastly, we grant summary judgment on Oden's § 1983 claims as she fails to introduce evidence of purposeful discrimination or evidence of a causal connection between her protected activity and her termination.